[No. 18459.  Department Two.  April 7, 1924.]

NORTHWESTERN LUMBER COMPANY, *Appellant*, v. GRAYS
HARBOR COUNTY *et al.*, *Respondents.*[1]

TAXATION (210)—EXCESSIVE ASSESSMENT—EVIDENCE—SUFFICIENCY.
Findings refusing to reduce the assessment for taxes on lumber in
the yard, because of an alleged car shortage, are sustained, where it
appears that the taxpayer was able to secure sufficient cars in five
months to move approximately the entire cut, at almost its own
price, which was largely in excess of the assessed valuation.

SAME (210).  Error in assessing hemlock lumber as fir does not
warrant a reduction of the taxes, where hemlock was selling for
within $5.00 of the price of fir, which was not sufficient to overturn
the assessment.

Appeal from a judgment of the superior court for
Grays Harbor county, Hewen, J., entered January 11,
1923, in favor of the defendants, in an action to enjoin
the collection of a tax, tried to the court. Affirmed.

*Wm. E. Campbell,* for appellant.

*A. E. Graham,* for respondents.

PEMBERTON, J.—This action was instituted by ap-
pellant to secure a reduction of the taxable valuation
for the year 1920 upon its real estate and personal
property near Hoquiam, Washington. At the time of
the trial, the appellant withdrew its request for relief
on certain of its real estate and timber and the trial
court granted partial relief as to certain other timber
and real estate owned by appellant, but refused the
reduction requested upon the personal property.

Appellant claims that the assessment of March 1,
1920, upon lumber in its yard is arbitrary and fraudu-
lent and on a fundamentally wrong basis.

It is the contention of appellant that, from July,
1919, to June, 1920, because of a car shortage it was

[1]Reported in 224 Pac. 681.

compelled to pile more lumber in its yard than ordinarily; that "the lumber loaded on cars became abnormally high. No one would buy lumber unless it was loaded on cars. Lumber piled in yards had no value for the reason that no one was buying lumber in the yard." Appellant relies principally úpon the rule announced in the case of *Grays Harbor Lum. Co. v. Grays Harbor County,* 122 Wash. 625, 211 Pac. 270.

The assessor placed the amount of lumber in the yard at 8,870,301 feet and placed the value at $287,700, and upon the fifty per cent basis as required by law the assessed value was $143,850. The one hundred per cent value was $32.50 per thousand, and the fifty per cent value was $16.25 per thousand.

The manager testified as follows:

"Under the terms of the trade it was a seller's market. Any lumber that a man could get on a car he could get pretty nearly his own price for it. That whole situation, however, was brought about by the car shortage and the abnormal demand for lumber at that time. It was an aftermath of the war."

The price ranged up to as high as $108.50 a thousand. One of the witnesses for appellant fixed the value of No. 1 V. G. flooring at $36 per thousand. It was selling as high as $89 per thousand. Number 3 V. G. flooring was selling as high as $75 per thousand, and No. 2 S. G. flooring as high as $75 a thousand.

The manager of appellant testified that, for the month of November, 1919, appellant cut 3,007,615 feet of lumber; for the month of December, 2,852,273 feet; for the month of January, 1920, 2,539,495 feet; for the month of February, 2,899,672 feet, making a total of 11,299,055 feet for the four months and an average of 2,822,000 feet. He also testified upon direct examination that, in the month of November, they received but 25 cars; the month of December, 22 cars; January, 67

cars; February, 67 cars; March, 134 cars. On cross-examination he admitted that they had received in November 34 cars; December, 29 cars; January, 86 cars; February, 82 cars. Thomas Sharpe, railway agent at Hoquiam, Washington, having charge of all railways entering the city, was called by appellant as a witness and stated that exhibit 10 was a tabulation of the cars received by appellant during these months, as follows: November, 93 cars; December, 32 cars; January, 92 cars; February, 81 cars; March, 154 cars, for the five months an average of 90 2/5 cars per month. The manager of appellant also testified that the cars loaded during the month of December contained over 31,000 feet per car on the average. The amount of lumber on hand on March 1, 1920, was not in excess of the average amount on hand on March 1 of the previous years.

Under this testimony it is clearly shown that the average number of cars received for the five months was sufficient to carry the entire amount of lumber manufactured during these five months, providing the month of March was an average cut, and under these facts we are unable to say that the trial court erred in refusing to lower the assessment upon this property because of an alleged shortage of cars.

It is contended that the assessor erred in assessing hemlock as fir lumber. Carl S. Baker, a resident of Hoquiam, made the assessment. He had previously had twenty-five years experience in the lumber business. The appellant does not know the amount of hemlock on hand on March 1. It had an inventory of January 1 and endeavored to ascertain the amount by computing the lumber cut from January 1 to March 1 and deducting the sales during that period. Hemlock was selling within $5 a thousand of fir, and this would not be considered sufficient to overturn the assessment.

The assessor failed to assess all the lumber in the yard. His computation amounted to but 8,870,301 feet, while the inventory of appellant shows 10,135,000 feet. Under the rule that cars would not be delivered to any one except the manufacturers of lumber, appellant was enabled to secure sufficient cars during these five months to move approximately its entire cut and at almost its own price.

The judgment of the trial court will be affirmed.

MAIN, C. J., BRIDGES, FULLERTON, and MITCHELL, JJ., concur.